Núm. 8061.—García, et al., apltes. *v.* Domenech, Tes., apldo.— Julio 26, 1940.

(Por la Corte, a propuesta del Juez Asociado Sr. Hutchison.)

Por cuanto, el juez de distrito dijo en su opinión, entre otras cosas lo que sigue:

"Los demandantes en este caso, alegan en su petición de *injunction*, que desde hace varios años, se dedican, en su planta de rectificación en Arecibo, a la compra de alcohol y espíritus destilados, a su rectificación y a la fabricación y venta de bebidas alcohólicas; que en o alrededor del 30 de septiembre de 1937, el demandado, Tesorero de Puerto`Rico, realizó una inspección y examen de las existencias de alcohol en poder de los querellantes, y en octubre 18 de 1937 informó a los peticionarios que a virtud del referido examen e inspección hechos por sus agentes, los demandantes estaban obligados a pagar cierta suma de dinero por concepto de contribuciones, enviándoles un estado demostrativo de todas las operaciones de entradas y salidas (compras y ventas) de alcohol y espíritus rectificados durante la vigencia de la Ley Núm 38 de 30 de julio de 1935 y de las Leyes Núm. 115 y Núm. 6 del año 1936, estado demostrativo que se acompañó a la demanda como un *exhibit*; que el 8 de septiembre de 1938, el quere-

llado comunicó a los demandantes que venían obligados a pagar una contribución montante a la suma de $2,116.43 y que de no pagarla procedería al embargo y venta en pública subasta de los bienes de los querellantes; que en el examen e inspección de las existencias de alcohol hechos por el Tesorero 'no se refleja con certeza y seguridad las existencias de alcohol en poder de los querellantes en la fecha en que se realizó porque el alcohol que estaba envejeciéndose en unos doscientos barriles de madera no fué trasladado totalmente al tanque donde se hacían las operaciones para determinar la cantidad de alcohol contenida en el líquido objeto de trasiego y aforo.'

"Después de alegar lo que a su juicio demuestra el estado anexo a la demanda, dicen en los hechos XII y XIII de su petición de *injunction:*

" 'XII.—Que los querellantes tienen derecho a virtud del artículo 24 de la Ley Núm. 115, aprobada en mayo 15 de 1936 y a virtud del artículo 28 de la Ley Núm. 6, aprobada en junio 30 de 1936, a que se les reconozca una pérdida del 4% del total de productos sometidos a rectificación y el querellado, sin motivo ni justificación alguna, se niega a reconocer esa pérdida que en 25,109.82 galones prueba que han sido objeto de rectificación asciende a 1,004.39 galones prueba;

" 'XIII.—Que los querellantes también tienen derecho a que se les reconozca a virtud del artículo 22 de la Ley Núm. 115, aprobada en 15 de mayo de 1936, y a virtud del artículo 27 de la Ley Núm. 6, aprobada en junio 30 de 1936, una merma que ha de fluctuar entre no más de un galón prueba por cada envase que contenga no menos de cuarenta galones medida por los primeros sesenta días de almacenaje del producto y no más de nueve galones medida por un período de cuatro años de almacenaje del producto, y que sobre los 7,640 galones prueba sometidos por los querellantes a proceso de envejecimiento durante un año y siete meses aproximadamente puede razonablemente estimarse en 5½ galones prueba por cada envase o barril, o sea 1,100 galones prueba en los doscientos barriles;'

"La demanda continúa diciendo que el Tesorero se niega a reconocer al querellante merma o pérdida alguna, que no tienen un remedio eficaz en el curso ordinario de la ley, que se violarían los derechos constitucionales de los querellantes, que sufrirían daños irreparables que implicarían la paralización de su negocio si se permitiera al demandado el embargar los bienes de los peticionarios para cobrar la referida suma de $2,116.43.

"Su demanda termina con la súplica de que se expida auto de *injunction* permanente para impedir el cobro de la referida contribución, y mientras tanto, se expida una orden de *injunction* preliminar.

"La cuestión a resolver en este caso es si la petición aduce hechos suficientes que otorguen a los peticionarios el derecho al remedio que solicitan.

" .

"En el presente caso, el Tesorero, para cobrar la contribución, tiene la autoridad que le confiere el artículo 4 de la Ley de Espíritus y Bebidas Alcohólicas. Todo el alcohol de los demandantes está sujeto a contribución. Lo único que reclaman es que de acuerdo con el artículo 24 de la Ley 115 de mayo 15, 1936, (Leyes de ese año, sesión ordinaria, pág. 633) y el artículo 28 de la Ley Núm. 6 de junio 30, 1936, (Leyes de ese año, Tercera Sesión Extraordinaria, pág. 71), y a virtud del artículo 22 de la Ley Núm. 115, supra, y el artículo 27 de la Ley Núm. 6, supra, tienen derecho absoluto a que se le reconozcan las

mermas allí especificadas. No vamos a discutir ahora, porque no tenemos jurisdicción para ello si los preceptos legales transcritos conceden o no un derecho absoluto al contribuyente; una mera lectura de los mismos impone al contribuyente ciertas obligaciones para con el Tesorero, como el de presentar a este funcionario pruebas satisfactorias de que dichas pérdidas se debieron a causas naturales que ni el destilador ni el fabricante pudieron evitar, y de que no hubo fraude, colusión o negligencia de clase alguna por su parte.

"También podemos decir que los artículos 22 de la Ley 115, *supra*, y 27 de la Ley Núm. 6, supra, exigen para conceder sus beneficios, que el contribuyente tenga el alcohol o los espíritus destilados depositados en un almacén de adeudo (*bonded warehouse*) y la parte demandante en la alegación IV de su demanda al decir 'que los peticionarios no tenían ni tienen almacén de adeudo' se encarga, ella misma, de colocarse fuera de los dominios de dichos artículos. Pero volvemos a repetir que estas son cuestiones para ser discutidas en el procedimiento correspondiente del pago bajo protesta. Un caso muy parecido al presente fué el de *Barceló* v. *Sancho,* resuelto por nuestra Corte Suprema, en julio 14 del corriente año. (55 D.P.R. 264.) Se trataba precisamente de la reclamación de una merma de acuerdo con el artículo 27 de la Ley Núm. 6, supra. La corte inferior había concedido un *injunction* preliminar. La corte superior revocó la sentencia declarando la improcedencia del *injunction* y que el demandante debía acudir al procedimiento autorizado por la ley después del pago bajo protesta.

" .    .    .    .    .    .    .

"Se alega en la demanda para traer el caso dentro de la jurisdicción de equidad, (Párrafo XVIII) 'que de realizarse lo que el querellado se propone realizar, los querellantes sufrirán daños irreparables imposibles de determinar y compensar con dinero, por cuanto el embargo y venta en subasta pública de bienes suficientes a cubrir la referida suma de $2,116.43 implicaría la paralización del negocio de rectificación de alcohol y el aniquilamiento total del referido negocio y la desaparición del mercado de los productos fabricados o elaborados por los querellantes y traería una multiplicidad de pleitos innecesarios.'

"Esta alegación no es una de hechos sino meramente una conclusión de derecho. Todo lo que el demandante tiene que hacer para evitar el embargo y evitar las desastrosas consecuencias que dice pudiera éste traerle es pagar las contribuciones y entablar el procedimiento marcado por la ley para reclamar su devolución. Copiamos de *Barceló* v. *Sancho,* supra:

" 'La demandante alegó que si no se expedía un *injunction* contra los demandados, ella sufriría daños considerables e irreparables, en una cantidad difícil de precisar, mucho más cuando la demandante se proponía continuar retirando de su almacén de adeudo otros espíritus destilados, como única forma en que podría continuar operando y funcionando su industria o negocio de rectificación de espíritus destilados; y que su negocio sería destruído.

" 'Los cuarenta barriles habían estado en el almacén de adeudo durante más de sesenta días. El período de cuatro años no había transcurrido. Fuera de esto nada había que demostrara cuánto tiempo habían permanecido en el almacén. Nada había que demostrara que la merma normal debida a absorción, filtración o evaporación o a otras causas naturales, excedería de las sumas especificadas en la tabla de mermas preparada por el Tesorero. Nada había que demostrara que la demandante hubiera sufrido alguna pérdida al pagar la con-

tribución en la forma indicada por la referida tabla. La pérdida potencial era puramente especulativa e hipotética. Mucho menos había nada que demostrara que la posible pérdida en exceso de las mermas especificadas en la tabla del Tesorero sería substancial. No importa cuál hubiera sido la diferencia, el pago de la misma bajo protesta y la iniciación de un recurso para recobrar la suma así pagada, no habría sido una inmensa carga. Bajo las circunstancias, la mera aseveración de que si no se expedía un auto de *injunction* contra los demandados, el negocio de la demandante sería destruído, no es una alegación suficiente de daños irreparables.

" 'Una alegación algo similar respecto a la inexistencia de un remedio adecuado en derecho resulta igualmente poco satisfactoria.'

"En *Houston* v. *Soap Co.*, 85 F. (2d) 649, se alegó que desde el pago de la contribución el contribuyente había estado sufriendo pérdidas en su negocio, que había tenido que tomar a préstamo el dinero para pagar el tributo, y que las consecuencias serían su ruina completa; se resolvió que esas alegaciones eran insuficientes; en *State of California* v. *Látimer*, 59 S.C.R. 166 (1939) la Corte Suprema de los Estados Unidos decidió que el hecho de que le fuera difícil al demandante conseguir el dinero para el pago de la contribución no traía el caso a la jurisdicción de equidad.

"En el presente caso, ni siquiera alega el demandante que le fuera difícil obtener el dinero para pagar la contribución.

"Hemos estudiado el alegato del peticionario y las deducciones que hace de los estados demostrativos del Tesorero no están sostenidos por éstos. Está equivocado cuando afirma que en septiembre 30, 1937, la demandante *debía* tener en existencia en su planta de rectificación 8,773.5 galones prueba de alcohol; por el contrario, del exhibit 5 aparece que la existencia *debía* ser una cantidad mayor, o sean, 9,648.4 galones, no teniendo en realidad más que 7,574.08 galones, o sea un déficit de 1,894.32 galones que haría en total una contribución de $2,273.18; sin embargo, de acuerdo con sus propias alegaciones, el Tesorero le cobra menos de esa cantidad, o sea solamente la suma de $2,116.43; si el demandante cree que debe reconocércele alguna merma por evaporación o cualquier otra causa, ya hemos dicho que ésa es una cuestión a discutir en el procedimiento de devolución de contribuciones pagadas bajo protesta. *Barceló* v. *Sancho*, supra.

"La jurisprudencia citada por el peticionario no tiene aplicación alguna, pues ella meramente sostiene que la doctrina del balance de perjuicios y conveniencias es aplicable solamente a *injunctions* preliminares y no a *injunctions* perpetuos; pero también es rudimentario que tanto en una solicitud de *injunction* preliminar como en una de *injunction* perpetuo, de la faz de la petición deben aparecer hechos suficientes que justifiquen la intervención de una corte de equidad. En *Barceló* v. *Sancho*, supra, se trataba de un *injunction* preliminar.

"No ha lugar a expedir el auto."

POR CUANTO, los errores señalados son:

"1.—La corte erró al resolver que la petición de *injunction* del caso de autos se basa en el derecho a pérdidas y mermas que tengan o puedan tener los peticionarios.

"2.—La corte erró al resolver que en el caso de autos el Tesorero de Puerto Rico actuaba con suficiente color de autoridad para exigir el pago de la suma reclamada a los peticionarios.

"3.—La corte erró al resolver que la demanda no alega hechos suficientes para que se expida un auto de *injunction* preliminar."

POR CUANTO, en apoyo del primer señalamiento y tratando de distinguir el caso de *Barceló, Marques & Co.* v. *Sancho Bonet, Tes.*, los apelantes insisten en que:

" . . . el caso de los peticionarios es enteramente distinto; el caso de los peticionarios no se funda ni se basa en el derecho a pérdidas y mermas," sino en errores de matemática o errores clericales de contabilidad incurridos por el Tesorero.

POR CUANTO, a pesar del esfuerzo hecho por los apelantes en su alegato tratando de cambiar su causa de acción, no encontramos que el juez de distrito cometió error al interpretar la demanda y "al resolver que la petición de *injunction* del caso de autos se basa en el derecho a pérdidas y mermas que tengan o puedan tener los peticionarios".

POR CUANTO, el alegato de los peticionarios no nos convence de que la corte de distrito cometió error al resolver que en el caso de autos el Tesorero de Puerto Rico actuaba con suficiente color de autoridad para exigir el pago de la suma reclamada como se alega en el segundo señalamiento.

POR CUANTO, tampoco erró la corte de distrito "al resolver que la demanda no alega hechos suficientes para que se expida un auto de *injunction* preliminar."

POR TANTO, se confirma la sentencia dictada por la Corte de Distrito de San Juan en julio 26, 1939.

El Juez Asociado Sr. De Jesús no intervino.